IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARLOS ESCOBAR,

    Petitioner,                        No. 2:10-cv-2100 JAM DAD P

    vs.

GARY SWARTHOUT,

    Respondent.                    FINDINGS & RECOMMENDATIONS

         Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at his parole consideration hearing held on January 29, 2009. The matter has been fully briefed by the parties and is submitted for decision. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

I. Procedural Background

         Petitioner is confined pursuant to a 1993 judgment of conviction entered against him in the Los Angeles County Superior Court following his conviction for second degree murder. (Doc. 1 at 1.) Pursuant to that conviction, petitioner was sentenced to fifteen years to life in state prison. (Id.)

1

The parole consideration hearing that is placed at issue by the instant federal habeas petition was held on January 29, 2009. (Id. at 43.) Petitioner appeared at and participated in the hearing. (Id. at 46, et seq.) Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for five years and the reasons for that decision.[1] (Id. at 84-91.)

Petitioner challenged the Board's 2009 decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court. (Answer, Ex. 2.) Therein, petitioner claimed that the Board's decision to deny him parole for five years violated the Ex Post Facto Clause of the United States Constitution and his right to due process. (Id.) That court denied the petition in a reasoned decision. (Answer, Ex. 3.) Petitioner subsequently challenged the Board's 2009 decision in a petition for writ of habeas corpus filed in the California Court of Appeal for the Second Appellate District. (Answer, Ex. 4.) The California Court of Appeal denied that petition with citations to In re Lawrence, 44 Cal.4th 1181 (2008) and In re Shaputis, 44 Cal.4th 1241 (2008). (Answer, Ex. 5.) Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court. (Answer, Ex. 6.) That petition was summarily denied. (Answer, Ex. 7.)

On August 6, 2010, petitioner filed his federal application for habeas relief in this court.

II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

/////

---

[1] As explained below, petitioner's deferral period for his next parole suitability hearing was subsequently changed to three years.

2

13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

3

Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ___, ___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

III. Scope of Review Applicable to Due Process Challenges to the Denial of Parole

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

1    A protected liberty interest may arise from either the Due Process Clause of the
2 United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an
3 expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209,
4 221 (2005). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States
5 Constitution does not, of its own force, create a protected liberty interest in a parole date, even
6 one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of
7 Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted
8 person to be conditionally released before the expiration of a valid sentence."). However, a
9 state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release
10 will be granted" when or unless certain designated findings are made, and thereby gives rise to a
11 constitutional liberty interest. Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78.

12    California's parole scheme gives rise to a liberty interest in parole protected by the
13 federal Due Process Clause. Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th
14 Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v.
15 Cooke, 562 U.S. ___, ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in
16 this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639
17 F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that
18 California law creates a liberty interest in parole.") In California, a prisoner is entitled to release
19 on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence,
20 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

21    In Swarthout, the Supreme Court reviewed two cases in which California
22 prisoners were denied parole - in one case by the Board, and in the other by the Governor after
23 the Board had granted parole. Swarthout, 131 S. Ct. at 860-61. The Supreme Court noted that
24 when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment
25 requires fair procedures, "and federal courts will review the application of those constitutionally
26 required procedures." Id. at 862. The Court concluded that in the parole context, however, "the

6

procedures required are minimal" and that the "Constitution does not require more" than "an opportunity to be heard" and being "provided a statement of the reasons why parole was denied." Id. (citing Greenholtz, 442 U.S. at 16). The Supreme Court therefore rejected Ninth Circuit decisions that went beyond these minimal procedural requirements and "reviewed the state courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence." Swarthout, 131 S. Ct. at 862. In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard. Id. at 862-63. See also Pearson, 639 F.3d at 1191.[3]

## IV. Petitioner's Claims

### A. Due Process

Petitioner seeks federal habeas relief on the grounds that the Board's 2009 decision to deny him parole, and the findings upon which that denial was based, were not supported by "some evidence" as required under California law. (Doc. 1 at 16, 18, 19-22, 25-36.) He argues that there is "no nexus between petitioner's commitment offense and his current risk of danger to society or threat to public safety if released today." (Id. at 16.) However, under the Supreme Court's decision in Swarthout this court may not review whether California's "some evidence" standard was correctly applied in petitioner's case. 131 S. Ct. at 862-63; see also Miller v. Oregon Bd. of Parole and Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process right is *procedural*, and entitles a prisoner to nothing more than a fair

---

[3] In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four years the Ninth Circuit had consistently held that in order to comport with due process a state parole board's decision to deny parole had to be supported by "some evidence," as defined in Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability. See Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

7

1 hearing and a statement of reasons for a parole board's decision[.]"); Roberts v. Hartley, 640
2 F.3d 1042, 1045-46 (9th Cir. 2011) (under the decision in Swarthout, California's parole scheme
3 creates no substantive due process rights and any procedural due process requirement is met as
4 long as the state provides an inmate seeking parole with an opportunity to be heard and a
5 statement of the reasons why parole was denied); Pearson, 639 F.3d at 1191 ("While the Court
6 did not define the minimum process required by the Due Process Clause for denial parole under
7 the California system, it made clear that the Clause's requirements were satisfied where the
8 inmates 'were allowed to speak at their parole hearings and to contest the evidence against them,
9 were afforded access to their records in advance, and were notified as to the reasons why parole
10 was denied.'")

11       The federal habeas petition pending before the court in this case reflects that
12 petitioner was represented by counsel at his 2009 parole suitability hearing.  (Doc. 1 at 45-46.)
13 As explained above, the record also establishes that at that hearing petitioner was given the
14 opportunity to be heard and received a statement of the reasons why parole was denied by the
15 Board panel.  That is all the process that was due petitioner under the Constitution.  Swarthout,
16 131 S. Ct. at 862; see also Miller, 642 F.3d at 716; Roberts, 640 F.3d at 1045-46; Pearson, 639
17 F.3d at 1191.  It now plainly appears that petitioner is not entitled to relief with respect to his due
18 process claim.  Accordingly, that claim should be rejected.

19       B.  Ex Post Facto Violation

20       Petitioner's next claim for relief is that application of the provisions of California
21 Proposition 9, also known as Marsy's Law, at his 2009 parole hearing violated the Ex Post Facto
22 Clause of the United States Constitution.  (Doc. 1 at 23-24.)

23       Marsy's Law was approved by California voters on November 4, 2008, became
24 effective on November 5, 2008, and was implemented on December 15, 2008.  (Cal. Penal Code
25 § 3041.5(b)(3); Doc. 19 at 12.)  Marsy's Law amended California law governing parole deferral
26 periods.  See Gilman v. Davis, 690 F. Supp.2d 1105, 1109–13 (E.D. Cal. 2010) (granting

1  plaintiffs' motion for a preliminary injunction enjoining enforcement of Marsy's Law, to the
2  extent it amended former California Penal Code § 3041.5(b)(2)(A)), rev'd sub nom. Gilman v.
3  Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011).  Prior to the enactment of Marsy's Law, the
4  Board deferred subsequent parole suitability hearings with respect to indeterminately-sentenced
5  inmates for one year unless the Board determined it was unreasonable to expect that parole could
6  be granted the following year.  If that determination was made, the Board could then defer the
7  inmate's subsequent parole suitability hearing for up to five years.  See Cal. Pen. Code §
8  3041.5(b)(2) (2008).  Marsy's Law, which applied to petitioner at the time of his 2009 parole
9  suitability hearing, amended § 3041.5(b)(2) to impose a minimum deferral period for subsequent
10 parole suitability hearings of three years, and to authorize the Board's deferral of a subsequent
11 parole hearing for up to seven, ten, or fifteen years.  Id. § 3041.5(b)(3) (2010).

12         Petitioner explains, and has come forward with evidence establishing, that he was
13 denied parole for a period of three years at his 2005 parole suitability hearing.  (Doc. 1 at 23,
14 108.)  The Board panel in 2005 recommended that petitioner be placed on the "11/2008
15 calendar" for his next subsequent hearing.  (Id. at 111.)  However, petitioner's next suitability
16 hearing was not scheduled until January 29, 2009, for "reasons that were not [petitioner's] fault."
17 (Doc. 19 at 2.)  Petitioner was then denied parole at his 2009 hearing for five years, apparently
18 pursuant to the provisions of Marsy's Law.  (Doc. 1 at 91.)  Petitioner argues that he should have
19 been evaluated for parole under the regulations in effect prior to the enactment of Marsy's Law
20 because his suitability hearing was supposed to have taken place in November, 2008, before
21 Marsy's Law was implemented.  (Doc. 1 at 91; Doc. 19 at 2.)

22         Attached to petitioner's traverse is a March 31, 2009 letter to "Lifers whose
23 [parole suitability] Hearings were Overdue on December 15, 2008" from an entity identified as
24 UnCommon Law, which "represent[s] prisoners in parole hearings and writs." (Doc. 19 at 12-
25 13.)  This letter states that pursuant to a settlement reached in a class action lawsuit filed in state
26 court, the Board of Parole Hearings agreed to apply the rules that existed prior to Marsy's Law in

9

1 all parole suitability hearings that were due to be held prior to the implementation of Marsy's
2 Law, but were either postponed or delayed for some reason that was not the prisoner's fault.  (Id.)
3 Prisoners are further advised in the letter that if their parole suitability hearing had already been
4 held, the Board would convert their parole denial period to "what was available before
5 Proposition 9."  (Id. at 12.)  Finally, the letter states that "the most likely (but not guaranteed)
6 conversions will be . . . denials of three or five years will become either one-or-two-year
7 denials."  (Id.)

8     In his traverse, petitioner clarifies that his claim presented in the instant federal
9 habeas petition is that "the application of Marsy's Law itself was improper at the time of his
10 hearing" and that "Marsy's Law should never have been applied during the instant hearing."  (Id.
11 at 1, 2.)  Petitioner requests that, if he is denied relief with respect to his due process claim, the
12 matter be remanded to the Board "with the directive that Mr. Escobar's deferral period for his
13 next hearing be according to the provisions of 3041.5 as applied prior to the implementation of
14 the prop. 9 provisions."  (Doc. 1 at 23-24.)

15     On May 17, 2011, respondent filed a "Reply to Petitioner's Traverse."  Therein,
16 respondent states, and provides evidence establishing, that although petitioner's next suitability
17 hearing was deferred for five years by the Board panel in 2009, that period was later reduced to
18 three years using pre-Marsy's Law statutory guidelines.  ( Doc. 20, Ex. 1.)  Respondent
19 represents to this court that petitioner's parole denial "has already been amended using the pre-
20 Marsy's Law statutory guidelines, and was modified to a three-year denial."  (Id. at 2.)  On June
21 1, 2011, petitioner filed a response to respondent's reply.  Therein, petitioner concedes that his
22 parole deferral period has been reduced from five years to the "pre-Marsy's Law three years," but
23 he argues that the deferral period should have been reduced to two years, pursuant to the
24 settlement in the state court class action lawsuit reported to him by UnCommon Law.  (Doc. 22
25 at 2.)  Petitioner contends that, pursuant to that settlement, prisoners whose deferral period had
26 /////

been set at five years, as his was, were supposed to receive a deferral period of "two years, not three." (Id.)

Petitioner is not entitled to relief on his claim that his rights under the Ex Post Facto Clause were violated when the Board in 2009 calculated his next parole suitability hearing pursuant to the provisions of Marsy's Law because, ultimately, Marsy's Law had nothing to do with the scheduling of petitioner's next hearing. As explained above, and as petitioner concedes, the date of petitioner's next suitability hearing was changed to conform to the law in existence prior to the enactment of Marsy's Law. Petitioner has therefore already received the relief he requests in the instant petition: that the deferral period for his next parole suitability hearing be calculated according to pre-Marsy's Law standards. There is no evidence before this court that the scheduling of petitioner's next parole suitability hearing by the Board in 2009 violated the Ex Post Facto Clause or any other provision of the U.S. Constitution. Whether or not the new deferral period constitutes a violation of some settlement agreement allegedly reached in an unidentified lawsuit in state court does not raise a cognizable claim for federal habeas relief.[4]

V. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[4] On May 19, 2011, petitioner filed a request that the court take judicial notice of In re Vicks, 125 Cal. Rptr.3d 627 (2011), in which the California Court of Appeal for the Fourth Appellate District held that the Marsy's Law provisions increasing the interval periods between parole hearings violated ex post facto principles. After petitioner's request for judicial notice was filed with this court, the California Supreme Court granted review of In re Vicks. See In re Vicks, 128 Cal. Rptr.3d 276 (2011). Accordingly, the Vicks decision may not be cited and has no bearing on these findings and recommendations.

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: October 19, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
escobar2100.hc